[Cite as *State v. Adams*, 2016-Ohio-4946.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Sheila G. Farmer, P. J. |
|     Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 15 CA 77 |
| DASSMOND ADAMS | |
|     Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common Pleas, Case No. 14 CR 729R


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    July 11, 2016


APPEARANCES:

For Plaintiff-Appellee

BAMBI COUCH PAGE
PROSECUTING ATTORNEY
DANIEL M. ROGERS
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

JOHN A. BOYD
One Marion Avenue
Suite 215
Mansfield, Ohio 44903

*Wise, J.*

{¶1} Defendant-Appellant Dassmond Adams appeals from his conviction for assault in the Court of Common Pleas, Richland County. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows:

{¶2} This case stems from an incident in the prisoner dining facility at the Mansfield Correctional Institution ("ManCI") on August 3, 2013. Appellant, then an inmate at ManCI, refused to follow the directions of Corrections Officer Mandy Lewis to move to a different part of the chow line. When Officer Lewis attempted to control the situation, appellant reacted violently, causing injury to the officer's face and body and knocking her unconscious. Tr. at 122-125, 131-139, 157. Lewis later testified that she suffered a broken nose and a torn right rotator cuff as a result of appellant's actions. Tr. at 136.

{¶3} On November 6, 2014, the Richland County Grand Jury indicted Appellant Adams on one count of assault, R.C. 2913.03(A)/(C)(3), a third-degree felony. At his arraignment on December 11, 2014, appellant pled not guilty to the indictment.

{¶4} After several continuances, the case proceeded to a jury trial on August 10, 2015. The State presented the testimony of four witnesses, including Officer Lewis. Appellant also testified in his own defense.

{¶5} On August 11, 2015, the jury found appellant guilty of assault. On the following day, the court sentenced appellant to three years in prison and three years of mandatory post-release control. On August 14, 2015, the court granted appellant forty-two days of jail-time credit.

**{¶6}** On September 4, 2015, appellant filed a notice of appeal. On December 10, 2015, we dismissed the appeal for failure to prosecute, as appellant had failed to file a brief or properly request an extension of time to file same. However, on January 12, 2016, we reinstated the appeal in the interest of justice.

**{¶7}** Appellant herein raises the following sole Assignment of Error:

**{¶8}** "I.   MR. ADAMS'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, SO HIS CONVICTION MUST BE REVERSED AND THE CASE REMANDED FOR A NEW TRIAL."

I.

**{¶9}** In his sole Assignment of Error, appellant argues his conviction was against the manifest weight of the evidence. We disagree.

**{¶10}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶11}** In the case *sub judice*, appellant was tried on the charge of violating R.C. 2903.13(A), which states as follows: "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶12} Furthermore, R.C. 2903.13(C)(3) states: "If the offense occurs in or on the grounds of a state correctional institution or an institution of the department of youth services, the victim of the offense is an employee of the department of rehabilitation and correction or the department of youth services, and the offense is committed by a person incarcerated in the state correctional institution or by a person institutionalized in the department of youth services institution pursuant to a commitment to the department of youth services, assault is a felony of the third degree."

{¶13} During appellant's trial, the State presented testimony from four witnesses and several exhibits. In the defense phase of the trial, appellant took the stand as the sole witness. We summarize the evidence as follows:

*Corrections Officer Mandy Lewis*

{¶14} The State's first witness at trial was the victim, Corrections Officer Mandy Lewis. She told the jury that as she was monitoring the ManCI's dining area on August 3, 2013, she observed appellant standing on the incorrect side of a guard rail, apparently waiting for someone to hand him a meal tray. She observed that appellant had a protective boot on his left foot for medical purposes. Ordinarily, inmates with medical limitations restricting their standing time wear a special pass or badge so that they can cut in line, although appellant was not carrying an actual pass that day. Tr. at 126. Lewis recalled that she nonetheless initially allowed appellant to stand at the rail due to his apparent injury, but changed her mind after appellant began doing what she considered to be exercise "dips" on the rail. Tr. at 127. Lewis testified that she approached appellant and ordered him several times to get in the regular chow line, but he ignored her. Tr. at

127-128.[1] According to Lewis, she then tapped appellant's lower non-injured leg with her foot in order to get his attention; however, appellant turned around and told her not to touch him. Tr. at 128-129. Lewis testified that she again ordered appellant to get in line, but he turned away and continued to ignore her. Tr. at 129. At that point, Lewis attempted to handcuff appellant as per the prison security guidelines, but appellant maintained a strong grip on the guard rail. *Id.* Lewis noted that appellant then knocked the handcuffs out of her hand. Lewis then attempted to spray mace on appellant in order to subdue him. Tr. at 131. Lewis testified that after she sprayed her mace, appellant grabbed her by her shirt and the back of her head and threw her face-first into the guard rail. Tr. 131-132, 139. Lewis stated that her next memory was of being treated by a prison nurse. Tr. at 134.

<em><u>Lieutenant Stephen Page</u></em>

**{¶15}** The State next called Lieutenant Stephen Page, a supervising corrections officer who was also on duty in the ManCI cafeteria on August 3, 2013. He explained that every inmate is briefed upon arrival at ManCI of the consequences of ignoring orders from correction officers. Tr. at 162-163. Lt. Page testified that inmates know they are supposed to carry any medical passes with them at all times. Tr. at 170. He noted there are approximately 2,700 inmates at ManCI, compared to fifty to sixty correction officers working each shift. Tr. at 156, 171. Lt. Page also noted that correction officers are taught that when inmates are combative or refuse to follow orders, officers are to order them to

---

[1] Officer Lewis conceded on cross-examination that the dining hall is generally not quiet during meal times. *See* Tr. at 143.

turn around and be handcuffed; if that order is ignored, the officers are to utilize mace and handcuffs. Tr. 163.

**{¶16}** Lt. Page specifically recalled that during the incident in question, he heard some noises and proceeded toward the tray line, following which he witnessed appellant throw punches at Officer Lewis' face, grab her and throw her into the guard rail, and then kick her. Tr. at 158. Lt. Page testified that he attempted to restrain appellant, during which time he observed blood and swelling on Lewis' face. Tr. at 161. Lt. Page recalled that he heard appellant state that "that bitch had what she had coming to her." Tr. at 162.

### *Cheryl Williams*

**{¶17}** The State next presented testimony from Cheryl Williams, a registered nurse at ManCI. Williams testified that during her treatment of Officer Lewis on August 3, 2013, she observed the officer shaking and bleeding from a possibly broken nose. Tr. at 180. Williams also told the jury that Lewis had bruising to her nose, knees, and under an eye, redness on both sides of her neck, and was experiencing high blood pressure. Tr. 180, 183. Williams testified that Officer Lewis indicated to her for purposes of treatment that appellant had grabbed her face and "slammed" it into a rail in the chow hall. Tr. at 181, 183. Williams later instructed Officer Lewis to go to the hospital or her doctor in order to receive additional treatment for her injured nose. Tr. at 183.

### *Trooper Justin Daley*

**{¶18}** The State's final witness was Trooper Justin Daley of the Ohio State Highway Patrol's criminal investigation unit, which is tasked with investigating crimes committed in Ohio's prisons. Trooper Daley was assigned to the investigation, ultimately speaking with Officer Lewis at the hospital, as well as appellant and several correction

officers at ManCI. The trooper also obtained a recording from the prison's video surveillance system showing the altercation in the cafeteria on August 3, 2013.

*Video Exhibit*

**{¶19}** In addition to exhibits presented in the form of photographs and medical reports of the various injuries to Officer Lewis resulting from the incident in question, State's Exhibit 1 was played at points during the trial. It is the aforementioned surveillance video from ManCI. *See* Tr. at 191. The video actually displays intermittent still frames, but it documented for the jury appellant standing along the rail, Officer Lewis approaching appellant and tapping on his leg, and appellant turning his to back her. The video also shows appellant lifting Officer Lewis off the ground, followed by the officer lying on the ground about two seconds later, followed by appellant with his fist up. *See* Tr. at 191-195.

*Appellant's Defense Testimony*

**{¶20}** Appellant testified that even though he told Officer Lewis he had a "no-standing pass" due to ankle surgery, he did not have a physical pass, but it was on his medical record. Tr. at 205-206. Appellant admitted to being able to walk and maneuver on his injured ankle without crutches. Tr. at 215, 221. He stated that at first he did not know Officer Lewis was speaking to him. Tr. at 206. He indicated the officer's tap with her foot "felt like a kick." Tr. at 207. He recounted that he told her it wasn't right to kick him as "I am not [your] pet or animal." *Id.* He then turned away from the officer. *Id.* He then recalled being sprayed, but insisted he saw no sign that Officer Lewis was trying to handcuff him. Tr. at 208. Appellant attributed his clenching of the guardrail to trying to "keep my body weight up [in] any way possible" to avoid falling. *Id.* He claimed that he

accidentally grabbed the officer as a reaction to avoid falling down. Tr. at 210. Appellant specifically denied slamming the officer's head into the guardrail, punching her, or kicking her. Tr. at 210-211. He did, however, admit to being in an altercation with Officer Lewis, but attempting to defend himself from her. Tr. at 210, 223-225.

*Analysis/Conclusion*

**{¶21}** The main thrust of appellant's "manifest weight" argument pits the reliability of the State's primary witnesses, Officer Lewis and Lieutenant Page, against the surveillance video and appellant's trial testimony wherein he denied the assault and sought to rationalize his actions during the encounter in the cafeteria. For example, he alleges various discrepancies in the testimony of Officer Lewis, such as the absence of observable handcuffs in the video and the failure to mention in her incident report her "tapping" of appellant's uninjured leg. Appellant further dismisses the credibility of Lieutenant Page, claiming the officer embellished his observations and maintaining Page never reported hearing appellant's "bitch" comment prior to taking the stand at trial. However, upon review under the *Martin* standard, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.

**{¶22}** Appellant's sole Assignment of Error is therefore overruled.

**{¶23}** For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.

By: Wise, J.

Farmer, P. J., and

Hoffman, J., concur.

JWW/d 0623